Court, Mr. Montgomery and Ms. Schreyer. My name is Dick Foley. It's my privilege to represent Christy Boyd this morning. If I have any time left, Your Honor, I would like to be able to reserve a couple of minutes for rebuttal. I think we can probably agree that the search here far exceeded the warrant. The warrant talked about, in fact, had three pages listed of property. It said nothing about persons, armed or otherwise, violent or otherwise. The defendants, none of them apparently read the warrant, certainly didn't abide by it. Most of them, as the record shows, thought they were searching for armed suspects, clear up that maybe somebody had an assault rifle. We have to go back and look at what the Supreme Court just said. I filed additional authorities ten days ago. Grover v. Ramirez. It is incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and lawfully conducted. Let me ask you, I think that the search is troubling, but if we take October 97 as the reference point, I would appreciate hearing from you your comments on why you think the law was clearly established at that point vis-à-vis this device or something that would be comparable to it. Well, I think the law at that time, and has been for a long time, is you don't use excessive force. I don't think it makes a great deal of difference what kind of weapon or device you use. Here, obviously, the device can burn. Every officer that testified said yes, contact skin can burn. It's known to have other restraining features. I've talked about those in the brief. But we're talking about qualified immunity here. We are. And even assuming that it was excessive force, did the officers know at that time, I mean was the law clearly established at that time to put an officer on notice that his actions were unconstitutional? I think it does because, again, we're looking at, this court has said, and the case is Casey, and other courts have said, you don't have to have a trial run, basically. We don't have to shoot somebody first to know that a pistol is deadly force. You don't have to have a case. You did have the Myers case, which the other side talks about, which pointed out that it was dangerously close to the limits to use what they call a flashbang or a diversionary device. Certainly, in that case, you did have somebody who had a violent history known to be there in the house, as vis-a-vis the facts here. And Saucier says we look at what confronts the officer. Well, what confronted them was a limited warrant in the first place. And I know you want to talk about this, but I think the warrant is the key circumstance. The warrant tells you what you can do. Otherwise, none of these people can go into anybody's home unless it's an exigent circumstance or a hot pursuit, which certainly wasn't here as a calculated decision. But it was a valid warrant, wasn't it? It was a warrant that the officers believed could be executed, and it's just the manner in which they came into the home. Well, it's a valid warrant to search for goods. It's not a valid warrant to search for criminals because Mr. Skinner, who led the search, said he wouldn't use a SWAT team except in high-risk circumstances. Well, if it's a warrant to search for goods, but the officers have a reasonable belief that there's a high risk to them because of people involved, aren't they permitted to secure the premises? I think not. I think not. Really? I don't think so. What's your best authority for that? Well, I think it's common sense. Maybe I'm missing something, so help me out. Well, I think if, in fact, somebody feels that they're in danger because of people there, then they ask for an expanded warrant. Remember, who controls the warrant? What's the expansion you would get? Search for suspects. Search for armed suspects. But if they aren't looking, but if that's not the purpose of the search, you've really compounded the problem because if they're not looking for any individual, they're looking for physical evidence. But they say they're here. Here they all testify they're looking for armed violent suspect or suspects. Remember again, please, who controls the warrant procedure? The homeowner or the occupant has never heard. The police go to the DA. The DA then calls Judge Dickerson out of bed at 4 in the morning. I'm not saying they lie, cheat, or steal, but, I mean, they're going to tell their side of the story. If they really believed that there was a need, they could have expanded the scope of the warrant right there. What do we do with the fact that the warrant included the gun? If I'm going into a house where I think there is a gun and there are no suspects just that it's the gun, it's the relatives or whatever that's been hidden there, are you suggesting that in order to take precautionary steps to be assured that that gun that I'm looking for isn't picked up and used by somebody, that I have to expand the warrant to somehow tie the gun to somebody who might use it? If you have a reasonable belief, then I certainly would. I mean, a cautious or conservative DA would do that. Probably a reasonable police officer would do that. I'm trying to get an understanding. Take the suspect out. There's no suspect there. It's just that the gun is there and they're concerned. The officers say, we're concerned if we go into this house that somebody may use the gun. Now, if there's no suspect, I can't in good faith come up with a warrant that says there's a suspect there. What am I as a police officer supposed to do to gain entrance to execute that warrant to make sure that the officers aren't subjected to the fire? But don't you through the DA ask the judge to expand the warrant because you're fearful that some... Expand it to what? To cover persons who might use the pistol. No, because you have no probable cause for any individual at that juncture. It seems to me that then you'd be, not you, but that individual's lawyer would be back in here saying that there was no probable cause. Well, if we get past the warrant issue, we are back to the, you know, whether there's a constitutional violation and was it clearly established. Right. We don't really need to clearly establish the law device by device. Excessive force is something that officers can figure out. And they knew it could potentially cause injury. That's essentially it, Your Honor. And that's essentially what this court has said. And forgive me, I think the case is in the brief. I just don't recall it. But where this court has said, you know, you don't have to explain certain devices. We all know the pistols hurt. Well, let's look at the allegations. I realize this may be a factual dispute. But the allegation is that they rolled or tried to get the flashbang in. The flashbang was recognized at the time as a legitimate protected device. In high-risk situations. In high-risk situations so that there wasn't some per se rule. It's not like tossing a live hand grenade in, for example. Or maybe even like tossing in, I don't know how it compares with tear gas. I have to think about that. But you don't presumably throw certain devices into the middle of an occupied room. That's understandable. But what is it in the flashbang device that says you can't use it in a multi-occupant room at all? What should be so clearly established that would make that accessible? Because if you have a multiple occupied room, small room, as they knew, it's dark, you can't see. People are likely to be there. And you know that contact with this device can cause serious burn injury. I mean, it's a given. I'm not sure that that's a given. But I think it was clear, and I don't think there's any dispute in the facts in this case, that the attempt was to put it up against the wall. That when the officer put it in or threw it, assuming he threw it into the house, that he meant to shove it up against the wall so that they would avoid contact with anyone. And they knew there were a lot of people in the house. That's their story. But there is evidence, as I pointed out in our brief, that it was tossed into the middle of the room. We have photographic evidence, and we have Christy Boyd's testimony. She was sleeping up against the wall, I thought. I don't think there's any dispute about that. Well, it shows how close she was to the wall. Also, Mr. Ellison testified that if you set it on its base, then it won't roll. But he put it on its side, so it rolled. Then it goes out into the middle of the room. Do you want to save your small amount left for rebuttal? I would if you have no more questions. Thank you. Thank you. May it please the Court. Janet Schraer on behalf of the Benton County Defendants. I understand the case law requires you to look in this excessive force and qualified immunity case to both elements of the test, and that is was there a constitutional violation. And if there was, then you go to the second half of the analysis, because our time is so limited. I think we should focus on, as you already have, the qualified immunity section of the analysis, because Plano simply has no defense to that. They have no opposition to that that is viable. First of all, as far as the Benton County Defendants are concerned, we weren't searching. We were just assisting to secure the premises in order for a courthouse case. But you had knowledge. The evidence, they had knowledge that this was going to be used. Yes. And it was all part of a quite organized plan. That's right. And secondly, the search warrant, nobody exceeded the search warrant. There is no evidence of that. After I read Plano's reply brief, and in my reflection in preparing for this case, because I don't have a strong criminal law background, I went and did some research on the same question that you just posed. Well, why, if there is a suspect in there, but if you're just going in for property, but you think there's an armed guy in there, is there any prohibition going in there? Is there any reason you need to expand the search warrant? There is no law that I could find that would provide that. And, of course, it makes no sense. Law enforcement wouldn't be able to do its job if that were the case. They were going in after property. One of the pieces of property was a .357 Magnum that had been stolen. And the officers knew that that was a possibility in there, knew there were potential criminal people in there, whether they were robbery suspects or not. And there was every reason to believe that a diversionary device would be the reasonable thing to do when they go in to secure the premises in order to obtain the jewelry. And on the other hand, the plaintiff's position is it might be, even if it were appropriate to use such a device, the manner in which it was used here where you don't know where it's going, where you have the possibility of it really essentially being thrown in and coming in contact with people, that the officer should have known that would be excessive force. And I guess you would agree that the principle of excessive force was certainly established by October 1997, correct? That's correct. And what is your response then to their argument that you don't need to go through this device by device, that you have the principle of excessive force and you have the conduct here and any reasonable police officer could have realized that you were going to, since you've got people in there, you might land this directly on people. Well, plaintiff's asking you to do precisely what the Supreme Court advised the Ninth Circuit you cannot do, and that is to meld the two tests. The test for whether it was excessive force is not the same as the qualified immunity test. And in Saussure, the Supreme Court counseled that they are different inquiries, and it is a particular, although you don't have to do specific fact case matching in order to be, to avoid qualified immunity, plaintiff doesn't have to show there was a case on all fours, factually and legally, that the officers knew about. However, Saussure advises it is a particularized inquiry, and the case law at the time. Well, where does that get us? I mean, we're on a particularized inquiry and you've got a flashbang grenade, which is an explosive device that can cause severe burns if it hits a person, or in fact if the guy's throwing it and it prematurely explodes, the literature on the device itself says it can create severe burns. So, for example, why didn't they toss in a tear gas grenade? I can't answer that. There's nothing in the record. We're going to have to have some case law from some judge saying, well, you know, that tactic is not permissible because a tear gas grenade can fragment and somebody in the room might be injured. I mean, there is, as counsel argues, a bit of common sense here. You've got an explosive device, and that puts the law enforcement folks on notice that this is not the usual manner of going into a situation. It's a less than lethal option. So that's what we have to consider, whether this less than lethal option has some inherent features about it that any reasonable police officer would have known at the time should not be used, except in some very high-risk situation where you could justify the risk of injury to others. I think you're, again, melding the test. How are we melding? As plaintiff is inviting you to do, the question is, was it clearly established that using a flashbang in this circumstance A dangerous device, not a flashbang. No. A dangerous device. A dangerous device was not clearly established that that would be excessive force. And aren't there cases that say that officers don't necessarily need guidance if the conduct is so patently violative of the constitutional right that reasonable officers would know in any event without any guidance from cases? Yes, there certainly is that case law. However, in this case, the facts simply don't support that. They went in, and there may be issues of fact. They're not material issues of fact about how this diversionary device was utilized. If it had been thrown into the middle without trying to place it against the wall, would you be arguing the same way? It was just okay as long as they were worried that they might be fired upon? They could just pop it in. Yes, but I don't think that the evidence supports that. I don't think the court would have suggested that. What if there was a slumber party, a teenage slumber party? They knew there was a teenage slumber party. Would it still be okay because they're worried about the people and the guns? It depends on the totality of the circumstances. In the two cases, at least two of the cases cited by the district court, the Myers case and I believe it was the Baker case, there were children. There were children in the house, and they found, although it was a close call, that it was not a clearly established right that one cannot use such a diversionary device, even though there were innocent children in the house. Is it clear here that the device was thrown in the middle of the room as counsel or plaintiff says? No. First of all, the photographs don't demonstrate that. The testimony, as was already pointed out I believe by Judge Fisher, is that the plaintiff testified she was sleeping near the wall. The testimony, regardless of whether it's two feet, three feet, four feet, that this device was placed or landed somewhere within a few feet of the wall, and there was no reason to believe people would be sleeping lining the wall. And when they planned this, that was their intent, to throw it up against the wall or place it up against the wall to avoid hitting people in the house? That's right. But it was a reasonable way to minimize the risk to the officers going in when they knew that there were people in there with criminal backgrounds, they knew there was a stolen gun on the premises that they were looking for, and in order to at least briefly keep people at bay while they were able to secure the premises, it was a reasonable way to go about that. So we believe there's not a constitutional violation because it was an objectively reasonable use of the device. What is the constitutional violation that you think we're dealing with here? Excessive force is a constitutional violation, correct? Yes. And you have a device that can, in fact, and did inflict a burn. Somebody got arguably seriously injured. So what do we need to decide now? What's the next step that you say so we aren't conflating anything, which I agree we shouldn't do? What is the next step in the analysis? That it was okay to inflict a burn on this person because of the circumstances surrounding it, accidental problems arising out of legitimate uses of force. So if they had fired warning shots of what they thought were the gun in a shot, a warning shot across the room above anybody's head and actually somebody happened to be a little taller than they thought and they got killed, that that was okay because of the circumstances? There are cases that support that, accidental people who are in the way of use of objectively reasonable force. And it's our view that the totality of the circumstances, looking at it not in hindsight, like plaintiff wants you to look at, but with confronting facts, confronting these officers, it was a reasonable use of force. But even if you find it was not, as the district court found it was not, that it was separate. The district court found there was a constitutional violation. It found there was a constitutional violation. That's not the end of the inquiry. It's a separate inquiry. We know that it's a separate inquiry. And that's the whole focus of the argument this morning was really I need to reasonableness. I need to defer to my co-sponsor here really quickly if I may. Thank you. I'm going to place the court, Jason Montgomery, on behalf of the city of Corvallis defendants. I wanted to switch gears and just address a point which I think is particularly strong for my clients, and that's getting away from the qualified immunity analysis and looking into whether we even have sufficient evidence in the record of a causal connection between the injury that is alleged and any conduct by the Corvallis defendants. We've made the argument that there is no such evidence, and I would refer to a statement by an appellant in the brief, which I think sums up what they feel is supported by the record, and that is that every officer who participated in the raid attended an extended briefing, at which time all discussed, decided upon, and concurred in the contours of the assault and the tactics to be used. And then they cite a number of excerpts of the record. I've carefully gone through each one, and I would encourage the court to do so if they don't trust what I have to say, and that is that I don't think that you'll find any evidence in the record that either of the Corvallis police officers discussed the use of the flashbang, that either officer in any way decided upon the use of it. Were they at the meeting? Well, we have evidence that they were at the meeting. We don't have evidence that they were there for the entire meeting. We don't have evidence that they were there for the meeting when the flashbang was used. But they were present when the officers came to the dwelling and before they entered, and they were all supporting each other before the flashbang device was used. Well, I don't know if I'd use the word supporting. I think maybe an analogy is most appropriate. Think of a construction context. This is like holding a carpenter liable for the action of an architect in designing the building. There's no evidence they had any role whatsoever in the overall plan or scheme. Didn't the city of Corvallis call in the SWAT team, the Benton County SWAT team? I mean, they're the ones that wanted this advice on how to secure the place because they knew it was a dangerous situation. I would agree they called in the SWAT team. I would disagree with the characterization of it as advice. I would characterize it as almost hiring an architect. If you look at the evidence, Skinner took charge of the SWAT team and made the decisions. He ran the briefing. He's the one that said we're going to use a flashbang. This is how we're going to use it. This is what is going to be done. If you look at the testimony, the Corvallis officers clearly say they're the specialists. We're not the specialists. Okay, we'll take you up on your offer, and we'll go back and take a look at that particular testimony with respect to the Corvallis. Thank you. Ten seconds, I think. The Baker case, I believe the children were known to be in another room. There's no evidence that they knew a stolen gun was on the premises, so I think counsel misspoke herself. I disagree with some of her factual renditions. That's what makes this a fact finder question, not a summary judgment question, as to where the flashbang was placed, thrown, or tossed, where the people were in there. There was a lot of evidence. Everybody attended the briefing. It was a collective decision by consensus. They all had input, and they discussed the use of the flashbang. In fact, Mr. Carson for the city and Mr. Skinner are probably equal in position, and apparently Mr. Carson had a call on this too. I picked my red lights on. Thank you. Thank you. Thank you for the arguments. As you know, we don't have any published decisions in this area, so you've presented us with a very interesting case. The case of Boyd v. Fenton County is submitted. Next for argument is Farrell v. Principi. Are both counsel present? Mr. Forse? I'm Mr. Seville, and I'll be Mr. Forse. All right. Well, in that case, we'll go to Corcoran v. Olson, and if you can wait a moment, if you will, please. We will also submit on the briefs, Taub v. Tobelius.
judges: McKeown, Fisher, Gonzalez